IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOE C.,[1]                                                    Case No. 3:25-cv-01550-JR

        Plaintiff,                                      OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

RUSSO, Magistrate Judge:

Plaintiff Joe C. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title II Disability Insurance Benefits under the Social Security Act. For the reasons set forth below, the Commissioner's decision is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND[2]

Born in January 1976, plaintiff alleges disability beginning October 30, 2021,[3] due to "PTSD, major depressive disorder, TBI, chronic migraines, tinnitus, hearing loss, herniated discs, chronic severe back and neck pain, obstructive sleep apnea, [and] obesity." Tr. 260, 310. His application was denied initially and upon reconsideration. On August 6, 2024, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 42-57. On August 22, 2024, the ALJ issued a decision finding plaintiff not disabled. Tr. 16-34. After the Appeals Council denied his request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of October 30, 2021 through his date last insured of December 31, 2021." Tr. 18. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease of the spine; obesity, traumatic brain injury; migraines; depression; anxiety; [and] PTSD." Tr. 19. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20.

Because he did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff

---

[2] The record before the Court constitutes approximately 2800 pages, but with some incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

[3] Plaintiff previously applied for, and was denied, disability benefits, such that his alleged onset date coincides with the date of the last decision. Tr. 16, 200, 306-07.

had the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) except:

> he can stand/walk 4 hours [and] sit 6 hours in an 8 hour workday, can occasionally climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, occasionally balance as defined in the SCO, occasionally stoop, kneel, crouch, and crawl, can tolerate occasional exposure to vibration, and can tolerate no exposure to hazards such as unprotected heights and heavy machinery. He can understand, remember, and carry out simple instructions, deal with occasional changes in a work setting, use judgment to make simple work related decisions, cannot perform work requiring a specific production rate (such as assembly line work), can tolerate frequent contact with supervisors, and occasional contact with co-workers and the general public.

Tr. 22.

At step four, the ALJ determined plaintiff had no past relevant work. Tr. 33. At step five, the ALJ concluded, based on the vocational expert's testimony, that there were a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as collator, sub assembler, and small products assembler. Tr. 33-34.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting his subjective symptom testimony concerning the extent of his physical impairments. In particular, plaintiff contends "the ALJ failed to give specific, clear, and convincing reasons for rejecting [his] allegations about the impact of his migraines on his ability to attend work on a regular and continuing basis [and] also failed to take into account the debilitating fatigue [he] experienced as a side effect of the medications that he took for his migraines." Pl.'s Opening Br. 4 (doc. 7).

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."

Page 3 – OPINION AND ORDER

*Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Therefore, in formulating the residual functional capacity, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that he stopped working full-time in 2016 because of "back pain, migraines, fatigue, [and] drowsiness," along with "trouble thinking, concentrating, hav[ing] problems with [his] memory, anger, frustration and . . . suicidal ideation." Tr. 48-49. Regarding migraines, he testified that his symptoms "have stayed consistent" since his prior application for benefits alleging disability as of June 2018 – i.e., he experienced "one to two migraines per week and then, four to five tension headaches per week." Tr. 51, 83. According to plaintiff, the migraines alone would prevent him from working. *Id.* He described them as "pretty

Page 4 – OPINION AND ORDER

severe" and requiring medication – i.e., Sumatriptan – and a "cool, dark room . . . to lie down [in]." Tr. 51-52. He explained that the Sumatriptan "helps alleviate the migraine" but causes fatigue "for the rest of the day and sometimes the next day." Tr. 52.

The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 23. Regarding plaintiff's migraines, the ALJ stated:

> [they] support a limitation to light work except that he can occasionally balance as defined in the Selected Characteristics of Occupations, can tolerate occasional exposure to vibration, and can tolerate no exposure to hazards such as unprotected heights and heavy machinery. [Plaintiff] reported frequent migraine headaches, multiple times a week, which, when treated with sumatriptan, took several hours to recover from. He suffered a mild TBI in 1996, and afterwards reported frequent migraines, as well as a history of syncope, which stopped in 2012. In August 2019, he reported "occasional" migraines. In October 2020, [plaintiff] reported complete migraine relief with sumatriptan, with sleepiness afterwards. In April and July 2021 he was treated with magnesium gluconate, sumatriptan, and riboflavin. He had previously tried cephaly. He was hesitant to try prophylactic therapy. On exam in October 2022, a neurologic exam was normal, with normal coordination and normal cognition and alertness. Botox injections were recommended. He underwent Botox injections in 2023. In 2024, he trialed topiramate and Aimovig. He reported finding propanol helpful. [Plaintiff's] reported migraines with photosensitivity and nausea and history of syncope support the above limitations, which are designed to accommodate migraine symptoms, avoid triggering migraines, and reduce his risk of injury. However, despite [plaintiff's] reports of frequent migraines, with extreme fatigue after using rescue medication, [plaintiff] was consistently alert and oriented on exam, with normal eye contact, no photophobia, normal neurological exams, normal coordination, and normal gait, which do not establish additional limitations.

Tr. 25-26 (internal citations omitted).

As a preliminary matter, plaintiff wholly neglects to reconcile the ALJ's 2021 and 2024 decisions. This is problematic given that plaintiff's relevant subjective symptom testimony is essentially unchanged and there is no new evidence specific to his longstanding

Page 5 – OPINION AND ORDER

migraines/headaches from on or around the alleged onset date through the date last insured. *Cf.* Tr. 1561 (plaintiff reporting his migraines started after his 1996 traumatic brain injury).

At the September 2021 hearing associated with his prior application, plaintiff testified: "I experience severe migraines one to two times a week, which requires me to take sumatriptan, which causes drowsiness. I also experience headaches aside from that, four to five times per week that require me to rest." Tr. 68. Additionally, he endorsed a number of other impairments – including back pain, anxiety, and depression – and medication side effects that caused him "to stay in bed most of the day" a number of times per week. *See, e.g.*, Tr. 64-67, 70-72. The ALJ relied on similar reasons for rejecting plaintiff's subjective symptom testimony in regard to both applications. *Compare* Tr. 89-90, *with* Tr. 25-26. But plaintiff neglected to appeal the ALJ's prior decision. *Cf. Munoz v. Cnty. of Imperial*, 667 F.2d 811, 817 (9th Cir. 1982) (courts "need not and do not consider a new contention that could have been but was not raised on the prior appeal"). And, significantly, plaintiff does not now challenge the ALJ's denial of his request to reopen his earlier claim.[4] *See generally* Pl.'s Opening Br. (doc. 7); *see also* Tr. 16 (plaintiff's "request [to reopen his prior claim] is denied because the new evidence does not justify reopening, and the prior decision remains correct").

Thus, while the Court is mindful of the fact that the ALJ found "changed circumstances" insofar as the current application concerned a different time period, plaintiff has provided no basis via his current appeal to diverge from the 2021 ALJ decision. Tr. 16; *see also Jane S. v. Comm'r Soc. Sec. Admin.*, 2021 WL 4303389, *7 (D. Or. Sept. 21, 2021) ("[a] prior denial of disability

---

[4] Stated differently, plaintiff does not argue that the 2021 ALJ decision is erroneous or otherwise present any theory that would allow the Court to engage in appellate review thereof. *Cf. Joseph C. v. Comm'r, Soc. Sec. Admin.*, 2025 WL 1726144, *3 n.2 (D. Or. June 20, 2025) ("[i]ssues not raised in a plaintiff's opening brief are waived") (citing *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006)).

Page 6 – OPINION AND ORDER

creates a presumption of continuing non-disability after the date of the first denial [which] is consistent with the principles of res judicata, and precludes reconsidering the prior ALJ's findings") (citations omitted). For this reason, alone, reversal is not warranted.

In any event, the Court finds that the ALJ did not commit harmful legal error in regard to plaintiff's subjective symptom testimony. An independent review of the record reveals that nothing in the ALJ's recitation of the medical evidence was inaccurate. Moreover, the scant evidence concerning migraines/headaches that does exist surrounding the two-month adjudication period supports the ALJ's determination that plaintiff did not experience daily interruption from associated symptoms.

Namely, in October 2020, plaintiff re-started care related to his head pain (he had last been seen in July 2018). Tr. 546; *see also* Tr. 2571 (plaintiff denoting "occasional" migraines during a 2019 psychological evaluation). At that time, he reported "[m]igraines 1-2 times per week" (but "100% relief using sumatriptan") and "[h]eadaches 4-5 times per week." Tr. 546. Plaintiff's provider informed him that his migraines were "likely propagated by mood disorder, insomnia, and OSA," which were not currently well-managed. *Id.* Plaintiff declined certain migraine treatments, indicating that he "prefers conservative management." *Id.*

In May 2021, plaintiff began acupuncture. He initially reported "migraines 1-2 times week" and headaches "2-3 times a week." Tr. 1498. Thereafter, plaintiff repeatedly remarked that his "[h]eadaches ha[d] become less frequent, no more than once a week," due to acupuncture treatment. Tr. 1494, 1496, 1500, 1506, 1512. During this period, plaintiff was also treated with migraine medications and referred to an "alternate neurology provider" per his request. *See, e.g.*, Tr. 544.

There is no other medical evidence particular to plaintiff's headaches or migraines until well after the date last insured (and that evidence is not reflective of plaintiff's symptomology during the relevant time period). *See* Tr. 1706 (plaintiff's 2024 provider opining that it was "unclear" whether his head pain and medication side effects were present from October 30 to December 31, 2021). And, as the ALJ noted, despite endorsing daily, multi-hour long debilitating head pain at the hearing (and corresponding medication drowsiness), plaintiff was alert and cooperative at all appointments, and there is no indication of ever needing to cancel or reschedule any treatment related to these symptoms. *See Jeannette B. v. Saul*, 2021 WL 1187031, *5 (D. Or. Mar. 29, 2021) ("[t]he mere 'possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'") (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996)).

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 26th day of June, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 8 – OPINION AND ORDER